## ATKINSON v. ATKINSON.

### No. 6489.

United States Court of Appeals for the District of Columbia.

Argued Dec. 14, 1935.

Decided Feb. 10, 1936.

Mark P. Friedlander and Robert I. Silverman, both of Washington, D. C., for appellant.

Dora Palkin, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District dismissing the petition of appellant (plaintiff) to annul his marriage to appellee (defendant).

According to the averments of the petition, defendant and John N. Keyser on May 29, 1894, were married in the District of Columbia and thereafter, until May 15, 1916, resided in the District as husband and wife. On May 15, 1916, Keyser deserted the defendant, moving into the state of Maryland, where, about eleven years thereafter, on June 28, 1927, he instituted in that state a suit for divorce on the ground that the defendant without cause had abandoned and deserted him. In that suit Keyser alleged that the defendant was and had been continuously a resident of the District of Columbia, and he therefore

prayed and obtained an order of publication against her. He persuaded the defendant not to contest the divorce proceeding, and Keyser and the defendant "did collude and connive" so that Keyser might obtain an absolute divorce in Maryland, "and as a result of such collusion and connivance" defendant did not appear and contest the petition. That Keyser "offered false testimony of a desertion of his then wife, the defendant herein." Thereafter, on November 4, 1927, the circuit court of Montgomery county, Md., sitting as a court of equity, decreed an absolute. divorce in favor of Keyser against the defendant.

Plaintiff herein, in reliance on defendant's representations that she had been legally divorced from Keyser, entered into a marriage ceremony with her on November 17, 1927, in the District of Columbia. Subsequently advised that the divorce was invalid and the marriage void, plaintiff on January 19, 1935, instituted this suit.

 Except for constitutional provisions, the law of no state can have effect beyond the bounds of the state imposing it,' unless by permission of the state where it is to be allowed to operate. Whether or not the operation of foreign decrees of divorce will contravene the policy of or do wrong or injury to the citizens of the state is to. be determined by the courts of that state. Those courts are the final judges of the occasions on which the exercise of comity will or will not make for justice or morality. Hubbard v. Hubbard, 228 N.Y. 81, 126 N.E. 508.

 The facts in that case were in material respects parallel to the facts in this. There, as here, plaintiff alleged that the decree divorcing the defendant from her former husband was invalid and plaintiff therefore sought an annulment of his subsequent marriage to her. At the time of her divorce the defendant in that case was a resident of Massachusetts and her then husband was a resident of New York. The Massachusetts court ordered constructive service of process upon him. He did not appear in the action and the absolute divorce for desertion was granted by default. It was claimed that the decree was void as to the courts of the state of New York in virtue of the adjudged policy of that state to refuse to recognize as binding a decree of divorce. obtained in the court of a sister state, not the matrimonial domicile, upon grounds insufficient for that purpose in the state of New York, when the divorced defendant resided in New York, was not personally served with process, and did not appear in the action. It was held that while the decree divorcing defendant from her former husband might adjudge her marital status within the state of Massachusetts as to the husband and the world at large, the courts of the state of New York, untrammeled by the full faith and credit clause of the Federal Constitution (article 4, § 1),[1] might give the decree within the confines of their jurisdiction such efficacy and effect as they might deem rightful in view of the public policy of the state. The court further held that (although desertion was not a ground for absolute divorce in New York) under the facts judicial discretion might rightfully and wisely be exercised in permitting the foreign decree to have the operation to which it was entitled in the state of Massachusetts.

There, as here, the decree sought to be given operation was obtained in a state not the matrimonial domicile and on grounds insufficient for divorce in the state in which it was sought to be given operation. When Keyser invoked the jurisdiction of the Maryland court, he had been a resident of that state for about eleven years (and it is not averred that he took up residence there to obtain a divorce). Section 38, art. 16, Maryland Code 1924, confers jurisdiction on the equity courts of that state to determine the matrimonial status of its own residents, but where the defendant in a divorce suit is a nonresident jurisdiction of the court is limited to the dissolution of the marriage. Garner v. Garner, 56 Md. 127. The Maryland decree in the present case went no farther.

The averment that defendant and Keyser were guilty of collusion did not affect the jurisdiction of the Maryland court, Keyser having been a bona fide resident and citizen of that state. United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93. In Simmons v. Simmons, 57 App.D.C. 216, 19 F.(2d) 690, 54 A.L.R. 75, and Frey v. Frey, 61 App.D.C. 232, 59 F.(2d) 1046, Virginia decrees of divorce had been obtained through fraudulent representations as to plaintiff's residence in each case. The Virginia courts, therefore, had no jurisdiction and the decrees were void.

---

[1] Haddock v. Haddock, 201 U.S. 562, 26 S.Ct. 525, 50 L.Ed. 867, 5 Ann.Cas. 1.

Unless, therefore, the giving effect of the Maryland decree would violate the public policy of the District of Columbia, that decree should be allowed to operate. In our view the Maryland decree may be given operation in the District of Columbia without violating the principles of morality or the public policy of the District. The parties were of mature age and had lived apart for eleven years when the jurisdiction of the Maryland court was invoked. It is not likely that there would have been reconciliation. It is equally apparent that each desired a severance of the marriage tie, as the defendant remarried. Neither party to the decree is attacking it. Under the facts it is more in the interest of public policy to validate the remarriage than to set it aside. Moreover, while the District divorce law in effect at the time of the Maryland decree and at the time the decree herein was entered (section 966, D.C.Code 1901; section 63, tit. 14, D.C.Code 1929) permitted limited divorce for desertion, the present divorce law of the District (section 966, D.C.Code, 1901, and section 63, tit. 14, D.C.Code, 1929, as amended by the Act of August 7, 1935, c. 453, § 1, 49 Stat. 539) authorizes absolute divorce for desertion.

Decree affirmed, with costs.

Affirmed.